David L. Mazaroli
Attorney for Plaintiffs
250 Park Avenue – 7th Floor
New York, NY 10177
Tel. (212)267-8480
Fax. (212)732-7352
e-mail: dlm@mazarolilaw.com

---------------------------------------------------------------x
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x

|  |  |
|---|---|
|  | : ECF CASE |
| AGCS MARINE INSURANCE COMPANY; | |
| BOSTON SCIENTIFIC CORPORATION; | : |
| BSC INTERNATIONAL MEDICAL | |
| TRADING (SHANGHAI) CO. LTD., | : **COMPLAINT** |
|  | |
| Plaintiffs, | : |
|  | |
| - against – | : |
|  | |
| NIPPON EXPRESS U.S.A, INC.; | : |
| UNITED AIRLINES, INC., | |
|  | |
| Defendants. | |

---------------------------------------------------------------x

Plaintiffs, through their undersigned attorney, allege as follows for their complaint against defendants upon information and belief:

1. This action involves damage and loss to a shipment of medical goods which defendants contracted to carry by air from the United States to China pursuant to carriage contracts entered into in the United States. The shipment is described in the annexed Schedule A, which is incorporated herein by reference, and is also referred to herein as "the Shipment."

2. The Court has federal question subject matter jurisdiction pursuant to 28 U.S.C. § 1331 as this action arises under a treaty of the United States, the Convention for the Unification of Certain Rules for International Carriage by Air, done at Montreal on 28

May 1999, reprinted in S. Treaty Doc. No 106-45, 1999 WL 33292734 (2000) (entered into force Nov. 4, 2003) ("Montreal Convention") and certain amendments, protocols predecessor, and successor treaties thereto in effect in the countries of origin and destination at the time of shipment and/or as incorporated in the air waybills, charter agreements, and/or other contracts between the parties.

3. The claims in suit otherwise arises under federal law, including federal common law, all within the meaning of 28 U.S.C. § 1331, and/or are supplemental claims within the meaning of 28 U.S.C. § 1367 to certain of the foregoing claims.

4. Plaintiff AGCS Marine Insurance Company ("AGCS") is a corporation organized under the laws of, and with its principal place of business in, the state of Illinois and sues herein as subrogated cargo insurer having paid the insurance claim for the damage to the Shipment. AGCS maintains a place of business at 28 Liberty Street, New York, NY 10005, through which the insurance claim was presented, processed and paid.

5. This action is also brought by, for and on behalf of Boston Scientific Corporation ("BSC"), a corporation organized under the laws of one of the fifty states, and its subsidiary BSC International Medical Trading (Shanghai) Co. Ltd. ("BSC International"), a corporation organized under the laws of a foreign sovereign, who were at all material times the shipper and consignee, respectively, of the Shipment, and, jointly and/or severally the entities with ownership interest therein, and who seek recovery of the $100,000.00 deductible amount applicable to the Shipment.

6. Defendant Nippon Express U.S.A., Inc. ("NEU") [also described as Nippon Express USA, Inc. in documents NEU issued for the Shipment] is believed to be

a New York corporation with its principal place of business located at 24-01 44th Road, 14th Floor, Long Island City, New York 11101, and was at all material times the carrier which contracted to provide transportation-related services for the Shipment from the place of receipt in the United States to the place of delivery in China in accordance with the terms and conditions of the Transportation Services Agreement executed by NEU from its office within the Southern District of New York and in effect between NEU and BSC as of on or about July 16, 2013 ("Transportation Agreement") and as further described in the air waybills referred to herein.

7. Defendant United Airlines, Inc. ("United") is believed to be a Delaware corporation with a registered agent c/o CT Corporation System, 28 Liberty St., New York, NY 10005, and maintains cargo operations hubs in multiple airports in New York City and was at all material times a carrier which provided certain transportation for the Shipment from the place of receipt in the United States to the place of delivery in China, including but not limited to air carriage from the airport of departure to the airport of destination. United has an agent

8. At all material times defendants were engaged in the business of providing services as carriers of cargo for hire, including with respect to shipments moving to, from, and/or through points in New York City, including within this district.

9. Defendants maintain routes for, and provides services related to, the carriage of cargo to from and through New York City, and said business activities are sufficient to subject defendants to personal jurisdiction of this Honorable Court and venue pursuant to 28 U.S.C. § 1391(d).

10. The Shipment included 10 cases of medical goods with a chargeable weight of 3,368.00 kilograms which moved from Quincy, MA, to Shanghai, China, by way of the airport of departure in Boston and the airport of destination in Pu Dong as described more fully in NEU Air Waybill NEU-24459094 dated February 22, 2018 and United Air Waybill 016-16719415 dated February 23, 2018 and others.

11. The Shipment was in good order and condition when it was received into the custody and control of defendants, or entities acting on their behalf, at or near the place of receipt in Massachusetts and each carton had a "KEEP DRY" warning with the internationally recognized umbrella symbol and a further warning that the goods were "FRAGILE."

12. No exceptions of any kind were issued by defendants, or entities acting on their behalf, when the Shipment was received into their custody at the place of receipt.

13. On or about February 22-23, 2018 defendants prepared and issued the aforementioned air waybills, which were each represented to be clean, i.e. stating no exception or notation for damage to the Shipments.

14. During the course of transportation, handling, and/or storage by defendants, or entities acting on their behalf, the Shipment sustained damage, including but not limited to damage caused by wetting and mildew.

15. When the Shipment was delivered by defendants at or near Shanghai, the medical goods were found to be in damaged condition, including with evidence of wetting and mildew.

16. The existence of damage to the Shipment was noted at the time of delivery and timely written complaint was tendered to defendants.

17.     As a result of the aforesaid damage, the Shipment could not be used, distributed or sold as intended and therefore had no, or had diminished, commercial value.

18.     By reason of the aforesaid Plaintiffs, and those on whose behalf they sue, have sustained damages in the amount of $266,556.84, no part of which has been paid although duly demanded.

19.     Plaintiffs sue herein on their own behalf and as agents and trustees for and on behalf of anyone else who may now have or hereafter acquire an interest in this action.

20.     Each cause of action herein is pleaded in the alternative.

## FIRST CAUSE OF ACTION

### Breach of Contract and Montreal Convention Air Treaty

(Against Nippon Express U.S.A. Inc.)

21.     Plaintiffs repeat and reallege the allegations in paragraphs 1 through 20 of this complaint, and incorporate the allegations in paragraph 31, *infra*.

22.     This cause of action arises under the Montreal Convention and is subject to enhanced terms and conditions as outlined herein.

23.     For agreed consideration consisting of enhanced freight fees and charges, defendant NEU contracted to provide specialized care for the Shipment during all periods of custody and carriage, and to transport the Shipment from the place of receipt in the United States to the place of delivery in China.

24.     Pursuant to the Transportation Agreement NEU assumed enhanced duties and agreed to be responsible for all actions of subcarriers and subcontractors acting on its behalf in the performance of transportation services for the Shipment.

25. NEU also agreed to higher limits of liability than those provided for in the Montreal Convention and, for purposes of the claims in suit, NEU's liability is not subject to limitation of any kind.

26. As relevant to the Shipment and the claims in suit, the Transportation Agreement includes the following core terms:

- [NEU] shall be fully responsible for the management and performance of its subcontractors, suppliers, vendors, agents, officers, directors and employees (collectively, "Representatives") who perform the Services.

- Each agreement or purchase order between [NEU] and each Subcontractor shall contain all applicable Specifications, special requirements, and clauses needed to comply with the requirements of this Agreement.

- [NEU] shall be responsible for actual claims or damages resulting from acts or failure to act on the part of [NEU] or its Representatives.

- No liability limitations shall apply to the extent that specific loss is caused by gross negligence or willful misconduct of [NEU] or its Representatives.

- In no case will [NEU's] liability under this Agreement exceed $500,000 USD per occurrence or $1,000,000 USD per annum.

27. Defendant NEU breached its duties and obligations under the carriage contracts, including the Transportation Agreement and the air waybill, and under the Montreal Convention, by failing to provide the requisite care for the Shipment during carriage from the place of receipt to the place of delivery and by failing to deliver the Shipment to the consignee in China in the same good order and condition as existed at the time of receipt in the United States.

28. As a proximate result of the conditions to which the Shipments were exposed during defendants' custody, and the gross negligence and willful misconduct of NEU and its Representatives as further outlined in Paragraphs 37 through 46, *infra*, the medical goods sustained damage and loss and could not be used for the intended usage and purposes.

29. By reason of the aforesaid Plaintiffs, and those on whose behalf they sue, have sustained damages in the amount of $266,556.84, no part of which has been paid although duly demanded.

## SECOND CAUSE OF ACTION

## Breach of Contract and Montreal Convention Air Treaty

(Against United Airlines, Inc.)

30. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 20 of this complaint.

31. By reason of the foregoing defendant United breached its duties and obligations under the air waybill, charter agreement and/or other contract, and pursuant to the Montreal Convention (or other applicable air treaty outlined in Paragraph 1) and/or federal common law. Defendant United was charged with the duty to provide the care which the nature of the cargo required during all periods of custody, including but not limited to during the period of pre-carriage "build-up" at the place of receipt, during storage prior to and after air transportation, during the course of transportation, during post-carriage breakdown, and to deliver the Shipment in good order and condition to the agreed destination to the intended consignee. Defendant United failed to do so and therefore is liable for the damage to the Shipment.

32. By reason of the aforesaid Plaintiffs, and those on whose behalf they sue, have sustained damages in the amount of $266,556.84, no part of which has been paid although duly demanded.

### THIRD CAUSE OF ACTION

### Breach of Bailment Obligations

(Against Nippon Express U.S.A., Inc. and United Airlines, Inc.)

33. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 20 of this complaint.

34. At the time the aforementioned damage occurred defendants were acting as bailees of the Shipments and in their own capacities, or through their contractors, agents, servants or sub-bailees, had a duty to safely and properly keep, care for and deliver the Shipments in the same good order and condition as when entrusted to them. Defendants also had a duty to ensure that the services they provided for the Shipments were performed with reasonable care and in a non-negligent and workmanlike manner.

35. Defendants breached their duties and obligations as bailees and negligently delivered the Shipments in damaged and depreciated condition at the place of delivery.

36. By reason of the aforesaid Plaintiffs, and those on whose behalf they sue, have sustained damages in the amount of $266,556.84  no part of which has been paid although duly demanded.

### FOURTH CAUSE OF ACTION

### Gross Negligence and/or Willful Misconduct

(Against Nippon Express U.S.A., Inc.)

37. Plaintiffs repeat and reallege the allegations set forth in paragraphs 1 through 20 and  23 through 26,  of this complaint.

38. At all material times defendant NEU was aware through its prior course of dealings with BSC that shipments of medical goods were considered fragile and required protective care, including the necessity to keep such shipments dry.

39. NEU was also aware of the required protective care by virtue of the printed warnings on the external cartons that the Shipment was fragile and must be kept dry.

40. NEU had a duty in relation to the Shipment to properly handle, store, build-up, prepare for transit, carry, protect and care for the cargo in question, including the obligation to prevent exposure to water, wetting, or moisture.

41. NEU was aware that if the Shipment was not kept dry that damage to the medical goods would probably occur.

42. NEU was aware that if the Shipment was not given the care fragile cargo requires, damage would probably occur.

43. The damage to the Shipment was caused by NEU's gross negligence and/or willful misconduct in that defendants, their agents, servants, ground-handlers, connecting carriers, subcontractors, terminal operators, truck drivers, warehousemen and employees failed to properly handle, store, build-up, prepare for transit, carry, protect and care for the cargo in question and in that defendants had no proper and effective procedures to handle, store, build-up, prepare for transit, carry, protect and care for the cargo.

44. Damage to the Shipment was specifically caused by the failure of NEU and Representatives acting on its behalf to keep the medical goods dry.

45. Damage to the Shipment was specifically caused by the failure of NEU and Representatives acting on its behalf to provide the degree of care which fragile cargo requires.

46. By reason of the aforesaid Plaintiffs, and those on whose behalf they sue, have sustained damages in the amount of $266,556.84, no part of which has been paid although duly demanded.

WHEREFORE, Plaintiffs demand judgment against defendants, jointly and severally:

    (a) for the sum of $266,556.84, without limitation of any kind;

    (b) for prejudgment interest at the rate of 9% *per annum*;

    (c) for the costs and disbursements of this action;

    (d) for such other and further relief as this Court deems proper and just.

Dated:  New York, New York
        February 20, 2020

LAW OFFICE,
DAVID L. MAZAROLI

*s/David L. Mazaroli*

David L. Mazaroli
Attorney for Plaintiffs
250 Park Avenue – 7th Floor
New York, NY 10177
Tel. (212)267-8480
Fax (212)732-7352
E-mail: dlm@mazarolilaw.com

## SCHEDULE A

Insurer: AGCS Marine Insurance Company  (Ref.: 20108203)

Shipper/Seller:  Boston Scientific Corporation, Quincy, MA

Consignee/Buyer: BSC International Medical Trading (Shanghai) Co. Ltd., Pudong, Shanghai

Shipment:     Medical Goods total chargeable weight 3,368 kilograms

Contractual Carrier: Nippon Express U.S.A., Inc. (a New York corporation)

Air Waybills: Nippon Express U.S.A., Inc. AWB NEU-24459094 dated February 22, 2018; United Airlines, Inc.  AWB 016-16719415 dated February 23, 2018

BSC SLI/Invoice: 42185

Airport of Departure: Boston, MA

Airport of Destination: Shanghai Pudong International Airport, China

Claim Amount: $262,089.00 plus mitigation expenses $4,467.84 = **$266,556.84**